**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

JENNIFER BROADHURST GRANT                                                    PLAINTIFF

v.                                            3:21-cv-00195-LPR

UNICARE LIFE AND HEALTH INSURANCE COMPANY
and FORD MOTOR COMPANY                                                  DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Lee

P. Rudofsky.   Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.   If

the objection is to a factual finding, specifically identify that finding and the evidence that supports

your objection.   Your objections must be received in the office of the United States District Court

Clerk no later than fourteen (14) days from the date of this recommendation.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

**DISPOSITION**

Plaintiff Jennifer Broadhurst Grant brings this action under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, to recover benefits she claims

to be due under Defendant Ford Motor Company's Salaried Disability Plan.   (Doc. No. 1.)   In

compliance with the Second Amended Final Scheduling Order (Doc. No. 15), the parties have

filed the Stipulated Administrative Record (Doc. No. 18, under seal), Ms. Grant has filed a Motion

for Summary Judgment[1] and accompanying brief and statement of facts (Doc. Nos. 21-23),

---

[1] The parties dispute whether Ms. Grant's Motion was properly filed as one requesting summary judgment, as opposed to a motion for judgment on the administrative record.   (Doc. Nos. 27 at 1, 31 at 1.)   For practical purposes, the distinction is irrelevant.   Both sides request judgment in their favor.

Defendants Ford and UniCare Life and Health Insurance Company, the claims processor, have filed responding briefs (Doc. Nos. 26-30), and Ms. Grant has filed a reply (Doc. No. 31). After careful consideration, and for the following reasons, I recommend Plaintiff's Motion for Summary Judgment (Doc. No. 21) be denied and that judgment be entered in favor of Defendants.

## I.      BACKGROUND

Ms. Grant worked as an Innovation Service Manager for Ford in its Ford Motor Credit Corporation offices in Dearborn, Michigan. (Doc. No. 18 at 44.) She was hired in 2016. (*Id.* at 564.) In early 2018, while her office building was undergoing a remodel, she developed bronchitis. (*Id.* at 36.) An allergist diagnosed her with an allergy to dust and mold. (*Id.*) In Ms. Grant's words, she became ill each time she attempted to return to work throughout 2018, although she was able to work outside the building and from home. (*Id.*) After a final attempt to return to the office in January 2019 and another round of illness, Ms. Grant "opted to work from home again" in February 2019. (*Id.* at 37.) However, "HR told [her] that the accommodations of working from home, which [she] had been using since last October was not approved and that [she] would need to repeat the ADA steps again." (*Id.*) Ford's decision to terminate the work-from-home accommodation was apparently due to Ms. Grant's failure to attend meetings or pass performance reviews. (*Id.* at 79.) Rather than return to the office or begin the ADA process anew, Ms. Grant took short-term disability leave beginning February 27, 2019. (*Id.* at 37, 79.)

Sherlyana Surja, M.D., a specialist in allergy and immunology, completed the Disability Benefit Claim Physician's Statement on Ms. Grant's behalf on March 13, 2019. (*Id.* at 39-43.) Dr. Surja noted Ms. Grant's diagnoses of asthma and allergic rhinitis and opined she could return to work as of March 14, 2019, with certain restrictions: avoidance of mold and dust, the use of a HEPA filter in the office, and the use of a mask. (*Id.*) Upon Ms. Grant's return to work in March

2019, Ford offered her the option of returning to her former office or using a different workspace in the Ford World Headquarters building.  (*Id*. at 37, 340.)  Ms. Grant chose the latter but soon became ill and returned to disability leave.  (*Id*. at 37.)  Dr. Surja completed another Physician's Statement on her behalf on April 17, 2019, this time finding she could not return to the office with restrictions and was disabled through May 31, 2019.  (*Id*. at 46-47.)

Ms. Grant saw Michael Harbut, M.D., an occupational and environmental medicine specialist, several times beginning in May 2019.  (*Id*. at 340-50.)  Dr. Harbut submitted a disability certification form for Ms. Grant on July 8, 2019, stating she was totally disabled from working from May 31, 2019, until her follow-up visit on September 20, 2019.  (*Id*. at 1102-03.)  Relying on this certification, UniCare approved Ms. Grant's claim for short-term disability benefits through September 20, 2019.  (*Id*. at 572.)  Ms. Grant's employment with Ford had ended on June 1, 2019, and she moved to Jonesboro, Arkansas, sometime after that.  (*Id*. at 631.)  She nonetheless continued to receive short-term disability benefits through September 20, 2019, because her claim was approved following her termination.  (*Id*. at 569.)

At Ms. Grant's September 20, 2019 follow-up visit, Dr. Harbut noted her continued complaints of fatigue and cough but did not list occupational asthma in his assessment.  (*Id*. at 346-47.)  He recommended she "stick with avoidance of triggers and prescribed medications" and follow-up with a primary care doctor and specialists local to her.  (*Id*.)  Dr. Harbut did not complete a new disability certification form.

On October 14, 2019, UniCare sent notice to Ms. Grant that it had not received information sufficient to support payment of benefits for the period beginning September 21, 2019.  (*Id*. at 901-03.)  UniCare noted it had attempted to obtain "objective medical evidence" to support the claim on October 4, October 8, and October 11, 2019; however, those efforts were unsuccessful,

and the claim was thus denied.    (*Id*.)    In subsequent emails, UniCare explained to Ms. Grant that the information received from Dr. Harbut was only sufficient to authorize her claim through September 20, 2019, and that it would need information from the specialists he had referred her to, if those specialists wished to certify her disability.    (*Id*. at 709-10.)    Ms. Grant insisted that the only doctor "keeping [her] off work" was Dr. Harbut.    (*Id*. at 709.)    On October 31, 2019, UniCare received a Medical Update Form for Disability Benefits from Dr. Harbut, which stated Ms. Grant was disabled from working beginning May 31, 2019, and continuing until at least her re-evaluation on January 10, 2020.    (*Id*. at 82-83.)    However, Dr. Harbut omitted the "[c]urrent objective and subjective information to support the extension of Disability benefits" the form called for, instead writing in "SEE PREVIOUSLY SUBMITTED OFFICE NOTE OF 9/20/2019." (*Id*.)

On November 7, 2019, Ms. Grant appealed the October 14, 2019 denial.    (*Id*. at 916.) UniCare denied the appeal on December 4, 2019, finding there were insufficient objective and clinical findings to substantiate disability beyond September 20, 2019.    (*Id*. at 916-17.)    UniCare noted in its denial letter that one of its physician advisors, after having reviewed the medical evidence, including "all office visit notes and test results," determined the disability requirements were not met.    (*Id*. at 916.)    Specifically, the physician advisor found Ms. Grant "has been and will be able to perform job duties on all dates from 9/21/19 through 1/20/20 so long as she is not working in the office environment in which she had been working during the spring and summer of 2018."    (*Id*. at 920.)    According to letters sent to Ms. Grant, UniCare contacted Dr. Harbut again on December 23, 2019, and January 15, 2020, in an attempt to obtain the required medical documentation; however, the information remained "outstanding."    (*Id*. at 922-23, 928-29.)

Ms. Grant appealed again on January 3, 2020, and submitted additional medical records.

(*Id*. at 926.)  UniCare upheld the denial on February 13, 2020, after review of the new medical evidence and a "peer to peer discussion" between Dr. Harbut and UniCare's physician advisor. (*Id*. at 944.)  The physician advisor determined there was insufficient medical evidence to support a finding of disability, as Ms. Grant's condition would not restrict her from working in another office environment.  (*Id*. at 944-45.)  Thus, the appeals department concluded Ms. Grant did not meet the eligibility requirements for short-term disability benefits beyond September 20, 2019. (*Id*.)  UniCare also noted in its denial letter that, though Ms. Grant referenced COPD and sleep apnea in her letters, Dr. Harbut had not provided any documentation supporting a disability claim relating to these conditions.  (*Id*. at 945.)

Ms. Grant appealed again on March 10, 2020, submitting additional medical records.  (*Id*. at 964-66, 972-96.)  UniCare again upheld the denial on April 21, 2020, noting that while the new medical records "provided a diagnosis of Obstructive Sleep Apnea," UniCare had not received a disability certification form from any licensed physician stating Ms. Grant was disabled on the basis of her obstructive sleep apnea.  (*Id*. at 1000.)

Ms. Grant filed another appeal on May 6, 2020 (*id*. at 1002-03), and UniCare once again upheld the denial on June 17, 2020, again finding there was insufficient medical evidence to substantiate her disability beyond September 20, 2019.  (*Id*. at 84-86.)  Specifically with respect to the sleep apnea diagnosis, UniCare acknowledged Ms. Grant had been diagnosed with that condition on January 8, 2020; therefore, "objective findings to support the Obstructive Sleep Apnea condition were evident as of" that date.  (*Id*. at 86.)  However, Ms. Grant did not meet the Plan's definition of an "active employee" when she was diagnosed with that condition, as she was not "actively at work on January 7, 2020," the day prior to disability.  (*Id*.)

Through counsel, Ms. Grant filed a "formal appeal" on October 16, 2020, and submitted

additional medical records.  (*Id*. at 88-91, 93-223.)  UniCare upheld the denial of Ms. Grant's claim on December 22, 2020, after a different physician advisor reviewed all of the medical evidence.  (*Id*. at 228-32.)  This physician advisor concluded (1) the medical evidence provided did not show "objective evidence of disease" that would prevent Ms. Grant from performing her job, (2) the sleep apnea was being treated appropriately and "should not interfere" with her ability to perform her job, and (3) no disability was substantiated beyond September 20, 2019.  (*Id*. at 231.)

On June 18, 2021, Ms. Grant, through counsel, submitted a "second-level appeal," along with additional medical records.  (*Id*. at 267-69.)  In a letter dated August 26, 2021, Ford's Salaried Disability Plan Committee acknowledged UniCare's July 6, 2021 receipt of Ms. Grant's appeal and informed Ms. Grant's counsel that the appeal had been placed on "hold" until additional information was provided.  (*Id*. at 1137.)  Specifically, the Committee requested "all the clinical treatment notes from all treating physicians" who evaluated Ms. Grant from September 21, 2019, forward.  (*Id*.)  The letter instructed Ms. Grant's counsel to notify the Committee in the event he preferred to have the Committee review the appeal without the additional information.  (*Id*.)

Neither Ms. Grant nor her counsel responded to the August 26, 2021 letter or provided the requested information.  According to Ms. Grant, she never received this letter.  (Doc. No. 23 at 9.)  According to Ford, it never received any indication that the letter had been returned as undeliverable, although Ford concedes the zip code used in the mailing address contained one incorrect digit.  (Doc. Nos. 29 at 13, 30 at 20.)  Ms. Grant filed this lawsuit on September 17, 2021.  (Doc. No. 1.)

## II.    STANDARD OF REVIEW

In reviewing the denial of ERISA benefits, the reviewing court applies a deferential abuse-

of-discretion standard if the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 792 (8th Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In all other cases, the plan administrator's decision is reviewed *de novo*. *Id*. Here, the parties agree that Ford's Salaried Disability Plan grants "[t]he Company as the Plan Administrator, acting through the Claims Processor or by itself" the "discretionary authority to grant or deny Benefits under this Plan." (Doc. No. 18 at 24.) Accordingly, the relevant standard of review is abuse of discretion.

Under the abuse-of-discretion standard, an administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence. *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010). Substantial evidence means "more than a scintilla but less than a preponderance." *Id*. (quoting *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 580 (8th Cir. 2008)). A decision supported by a reasonable explanation should not be disturbed, even though a different reasonable interpretation could have been made. *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 833 (8th Cir. 2014).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

As a threshold matter, UniCare and Ford argue Ms. Grant's claim is barred because she failed to exhaust her administrative remedies. (Doc. Nos. 28 at 10-16, 29 at 22-29.) Specifically, although she filed a second-level appeal, she did not see it through to completion, instead filing her lawsuit less than a month after Ford acknowledged the appeal, placed it on hold, and requested more information. It is well settled that, where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, the claim for relief

is barred.  *Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010).  Exhaustion of administrative remedies "enables employers and ERISA-covered plans 'to obtain full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision.'"  *Id*. (quoting *Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003)).  "The process is of substantial benefit to reviewing courts, because it gives them a factual predicate upon which to proceed."  *Id*.

Exhaustion of administrative remedies was clearly required under Ford's Salaried Disability Plan.  Section 11.02 provides for a first-level appeal, stating a participant may "request a review upon appeal by written application to the Claims Processor who provided the denial of the claim."  (Doc. No. 18 at 27.)  Section 11.03 provides for a second-level appeal, stating a participant may "request a review upon appeal by written application to the Salaried Disability Plan Committee" in the event the claims processor denies a first-level appeal.  (*Id*. at 28.)  Pursuant to section 11.04, no legal action may be brought "until after the claims and appeals procedures of the Plan have been exhausted."  (*Id*. at 29.)  Ms. Grant maintains the second-level appeal was permissive rather than mandatory, citing the use of the word "may" in section 11.03. (Doc. No. 31 at 2-3.)  But sections 11.02 and 11.03 both use the word "may," and the broader context plainly indicates that a participant *may* pursue an appeal – as an alternative to accepting the decision and abandoning the claim.  The United States Court of Appeals for the Eighth Circuit has established that, even if a plan uses "permissive language" to describe an appeal procedure, "claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court."  *Wert v. Liberty Life Assur. Co. of Boston, Inc.*, 447 F.3d 1060, 1066 (8th Cir. 2006) (quoting *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 69 (8th Cir. 1997)).

Ms. Grant also takes issue with the August 26, 2021 letter from Ford's Salaried Disability

Plan Committee that acknowledged receipt of her second-level appeal and placed it on hold pending further information. (Doc. No. 18 at 1137.) She questions the "authenticity" of the document, suggesting perhaps it was never sent and insisting it was not received. (Doc. No. 22 at 13-14.) Ms. Grant's suspicions notwithstanding, the letter appears in the administrative record, a document to which the parties stipulated. (Doc. Nos. 16, 17.) Moreover, as Ford points out, there was no indication that Ms. Grant did not receive the letter, so Ford was waiting for her response in good faith at the time she filed this lawsuit. Ms. Grant also claims the letter's request for additional information was "absurd" because she had already submitted over 300 pages of medical records with her appeal. (Doc. No. 22 at 14.) But this begs the question: how was Ford to know additional records did not exist?

Finally, Ms. Grant asserts the letter was late, as it was dated sixty-nine days after she submitted the second-level appeal on June 18, 2021. (*Id.*) As Ms. Grant points out, section 11.03, in accordance with 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i), requires the Committee to issue a decision on appeal within forty-five days, absent an extension for special circumstances. (Doc. No. 18 at 28.) But the forty-five-day period begins to run upon "receipt of the Participant's request for review," and Ms. Grant's request for review was received on July 6, 2021. (*Id.* at 28, 1137.) As such, the letter was dated fifty-one days after receipt, and, pursuant to 29 C.F.R. § 2560.503-1(i)(4), it tolled "the period for making the benefit determination on review" until Ms. Grant responded to the request for additional information. This six-day delay constitutes a *de minimis* violation under 29 C.F.R. § 2560.503-1(l)(2)(ii):

> [T]he administrative remedies available under a plan with respect to claims for disability benefits will not be deemed exhausted based on de minimis violations that do not cause, and are not likely to cause, prejudice or harm to the claimant so long as the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant.

9

In short, Ms. Grant abandoned her second-level appeal before it was disposed of and commenced this lawsuit instead. Because she failed to exhaust the administrative remedies required under Ford's Salaried Disability Plan, her claim is barred. *Chorosevic*, 600 F.3d at 941.

### B.    Merits

Even if Ms. Grant had pursued the second-level appeal to finality, and Ford's Salaried Disability Plan Committee had affirmed UniCare's denial of the claim, this decision would not have been an abuse of discretion. As Ms. Grant points out, review of an administrator's decision under an abuse-of-discretion standard, though deferential, is not tantamount to rubber-stamping the result. *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005). But, reviewing this decision for reasonableness, I find it is "supported by substantial evidence that is assessed by its quantity and quality." *Id.* (citing *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 798 (8th Cir. 2002)).

Under section 3(iv) of Ford's Salaried Disability Plan, Ms. Grant was required to "provide proof of Disability including, but not limited to objective and clinical evidence of the Disability at the commencement of the Disability and throughout the duration of the Disability." (Doc. No. 18 at 11.) UniCare ultimately found that she had supplied sufficient proof of disability for the periods from February 27 through March 13, 2019, and from April 9 through September 20, 2019, and Ford paid short-term[2] disability benefits to cover those periods. (*Id.* at 569, 880-81.) However, UniCare found she had not provided sufficient proof of disability for the period beginning September 21, 2019. (*Id.* at 901-03.) This decision was not arbitrary or capricious.

---

[2] Although Ms. Grant claims entitlement to long-term disability benefits, the record demonstrates that she had not yet exhausted short-term benefits as of September 20, 2019. (Doc. No. 18 at 679.) Accordingly, the question at issue is whether she is entitled to continued short-term benefits beyond September 20, 2019.

Dr. Harbut certified, and submitted medical evidence to support, that Ms. Grant was disabled through September 20, 2019.  (*Id*. at 1102.)  His October 31, 2019 "Medical Update Form for Disability Benefits" purported to substantiate her disability beyond that date, but it did not include the required "objective and subjective information to support the extension" of benefits.  (*Id*. at 82-83.)  Instead, Dr. Harbut referred to his office notes of September 20, 2019. (*Id*.)  Those office notes did not include a diagnosis of occupational asthma and merely instructed Ms. Grant to "stick with avoidance of triggers and prescribed medications."  (*Id*. at 346-47.)  The record shows that UniCare sought further information from Dr. Harbut in an effort to substantiate Ms. Grant's entitlement to continued benefits, but those efforts were unsuccessful.  (*Id*. at 922-23, 928-29.)  UniCare's physician advisor, Dr. Greenhood, reviewed the medical evidence and found Ms. Grant would be able to perform her job duties after September 20, 2019, as long as she was not working in the office environment that had triggered her dust and mold allergies.  (*Id*. at 920.)  And after a peer-to-peer discussion with Dr. Harbut, Dr. Greenhood maintained that Ms. Grant's condition would not restrict her from working in another environment.  (*Id*. at 944.)

Thus, Ms. Grant failed to provide proof of disability throughout the duration of her claimed disability, as required by section 3(iv).  Section 2.11 of the Plan defines "disabled," for purposes of short-term benefits, as "an Employee who is unable to do his/her job or any comparable job at the Company."  (*Id*. at 6.)  The medical evidence shows that Ms. Grant was able to do her job after September 20, 2019, but was restricted from working in her previous office environment. Under the terms of the Plan, this made her ineligible for benefits.  Pursuant to section 2.23, the definition of "partially disabled" specifically excludes "Covered Employees able to perform their regular job or comparable job . . . but who have limits on work assignments *associated with a*

11

*specific location* and/or specific person(s)."[3]   (*Id*. at 8.)   (Emphasis added.)

Ms. Grant maintains she was not partially disabled – her point presumably being that she was totally disabled.   (Doc. No. 22 at 19.)   Comparing the Plan's definitions of "Disabled" (section 2.11) and "Partially Disabled" (section 2.23), it is clear that a person who is disabled is unable to work "due to an accident, illness, or pregnancy related condition," while a person who is partially disabled is unable to work "due to medical restrictions associated with" an accident, illness, or pregnancy-related condition.   (Doc. No. 18 at 6, 8.)   The medical evidence shows Ms. Grant was able to perform her job after September 20, 2019, which means she was neither disabled nor partially disabled.   She did have "limits on [her] work assignments associated with a specific location" (*id*. at 8), but that restriction did not make her disabled.   Under the express terms of the Plan, it made her ineligible for benefits.

Ms. Grant also argues it is "the very definition of arbitrary and capricious" for UniCare to have found she was disabled up to September 20, 2019, but not afterward, when there was no indication her condition had improved.   *See Fairbaugh v. Life Ins. Co. of N. Am.*, 737 F. Supp. 2d 68, 82 (D. Conn. 2010).   (Doc. No. 22 at 21.)   Her argument ignores the fact that all of the medical evidence post-dating September 20, 2019, pointed to one conclusion:   Ms. Grant was able to perform her job, as long as she did so in a different environment.   Even Dr. Harbut's office

---

[3] Section 7.07 contains similar language:

> A Covered Employee who is Partially Disabled and subject to limitations that permit the Employee to perform his or her regular job or a comparable job, but prohibit the Covered Employee from returning to work *at a specific work location* and/or in proximity to or with specific person(s) does not satisfy the eligibility requirements for Short-term Benefits or Long-term Benefits as defined by the Plan.

(Doc. No. 18 at 20.)   (Emphasis added.)

notes from the September 20, 2019 visit merely instructed Ms. Grant to "stick with avoidance of triggers." (Doc. No. 18 at 346-47.) Dr. Greenhood found she would be able to work after September 20, 2019, "so long as she is not working in the office environment in which she had been working during the spring and summer of 2018."[4] (*Id*. at 920.) Dr. Greenhood stood by this conclusion after Ms. Grant submitted additional medical records – many of which concerned her new complaints of COPD and sleep apnea. (*Id*. at 944-45.) And a different physician advisor concurred in this opinion after reviewing even more medical evidence. (*Id*. at 231.) Again, the Plan required Ms. Grant to provide proof of disability, and the medical evidence she submitted simply did not substantiate her entitlement to benefits beyond September 20, 2019.

Finally, Ms. Grant claims UniCare "sandbagged" her by changing the basis of its denial of her claim on appeal. *See Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) ("We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."). (Doc. No. 22 at 22-25.) According to Ms. Grant, UniCare initially denied her claim "on the basis that she was 'partially disabled' and, therefore, ineligible for benefits" and then, after she filed a first-level appeal challenging this finding, denied her claim on the basis that she "did not have any illness-related restrictions whatsoever." (*Id*. at 23-24.) Ms. Grant misstates both the reason for the initial denial and the reason why the denial was affirmed. UniCare sent Ms.

---

[4] Ms. Grant takes issue with Dr. Greenhood's "dicta" regarding her move to Arkansas. (Doc. No. 22 at 20.) After finding she was able to work in a different office environment, Dr. Greenhood stated, "However, one further notes that as of 9/20/19, the claimant was living full time in Jonesboro, Arkansas making work in her previous office environment in Michigan impossible." (Doc. No. 18 at 920.) Ms. Grant misconstrues this statement to mean her relocation "made working in an alternate environment impossible." (Doc. No. 22 at 20.) What Dr. Greenhood actually said was that, due to her move, she would not have been able to continue working in the same office environment anyway.

Grant five denial letters before her counsel pursued a first-level appeal on her behalf.   (Doc. No. 18 at 901-03, 916-17, 944-45, 1000, 84-86.)   In each letter, UniCare explained that Ms. Grant had failed to submit information sufficient to substantiate an extension of benefits beyond September 20, 2019.   More specifically, UniCare explained that, while the medical evidence suggested she was restricted from working in the same office environment, this did not make her disabled.   Then, in deciding her first-level appeal, UniCare consulted a new physician advisor, who concluded "no disability ha[d] been substantiated" beyond September 20, 2019.   (*Id*. at 231.)   This finding was wholly consistent with UniCare's previous denials.   The statement that there was no "objective evidence of disease that would prevent" Ms. Grant from performing her job was not a comment on whether Ms. Grant was subject to any location restrictions.   The bottom line is that she was not disabled beyond September 20, 2019.[5]

## C.      Equitable Relief

Ms. Grant claims entitlement to equitable relief under 29 U.S.C. § 1132(a)(3).   In particular, she asks that her claim be remanded on the basis of Defendants' failure to obtain medical information to support her claim and their various "material misrepresentations" that amounted to breaches of their fiduciary duty.   (Doc. No. 22 at 25-27.)   Contrary to Ms. Grant's assertions, the record shows UniCare made many attempts to obtain medical information from her providers, despite Ms. Grant's repeated declarations that she had already provided all that was required.   (Doc. No. 18 at 709, 902, 922-23, 928-29.)   And the alleged misrepresentations, Ms.

---

[5] Nor is there merit to Ms. Grant's complaints of UniCare's use of a "phantom" reviewer on appeal.   (Doc. No. 22 at 22-24.)   In accordance with 29 C.F.R. § 2560.503-1(h) and section 11.02 of the Plan, UniCare was required to consult with a health-care professional in the same field of medicine who had not been involved in the initial denial.   In denying the first-level appeal, UniCare informed Ms. Grant that Dr. Greenhood was "not utilized for this review" and that it instead consulted with an occupational medicine physician.   (Doc. No. 18 at 230.)   This physician's complete report and identification appear in the record.   (*Id*. at 519-23.)

Grant's references to Dr. Greenhood's "dicta," the "phantom" medical review, and the "suspect" letter from Ford placing her appeal on hold, are all - for reasons previously explained - unavailing. So, Ms. Grant is not entitled to remand.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Ms. Grant's Motion for Summary Judgment (Doc. No. 21) be DENIED and judgment be entered in favor of Defendants.

DATED this 6th day of September 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE